# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL MAGGIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 2893 |
| ) | |
| KONICA-MINOLTA BUSINESS ) | |
| SOLUTIONS USA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Samuel Maggio has sued Konica-Minolta Business Solutions U.S.A., Inc. ("KMBS") alleging discrimination, wrongful termination, hostile work environment, and retaliation under the Americans with Disabilities Act ("ADA"). KMBS has moved for summary judgment. For the reasons below, the Court grants the motion in part and denies it in part.

## Background

Maggio claims to have had a physical disability since 1969. He was wounded twice in Vietnam by shrapnel from mortars, and he suffers from rheumatoid arthritis and hypertension. He allegedly has a difficult time walking long distances, lifting large items, climbing stairs, and standing for extended periods of time because of the shrapnel wounds and arthritis.

KMBS is a company that provides document imaging machines and systems to businesses. It exists as the result of a merger between the Minolta and Konica companies in 2003. Maggio worked for Minolta prior to the merger.

Maggio began his employment with Minolta in December 1997 as a Technical Representative III Field Technician ("field tech"). He was responsible for making service calls at customer locations to install, repair and maintain equipment. He worked as a field tech until the spring of 1999, when Minolta put him on probation due to customer complaints about his work.

During his probation, Maggio sent a letter to Allen Hans, Minolta's vice president and general counsel, advising that he was limited in his ability to stand, walk, and lift, and that he could not climb stairs with his tools, activities that were often necessary to fulfill his field tech duties. Partly as an accommodation for Maggio's alleged impairments, Minolta offered Maggio a full time position as an In-House Shop Technician ("shop tech"), which he accepted and began in August of 1999.

Shop techs repair imaging units, refurbish older models for resale, repair demonstration machines used by the sales department, pre-install programs on copy machines, rebuild seriously damaged machines, and reinstall missing parts on new machines. Unlike in his field tech position, as a shop tech Maggio handled service repairs at a single location. As an accommodation to Maggio's impairments, Minolta assigned Maggio to work on smaller copiers and imaging unit components. The size of these machines were such that Maggio could work on them while sitting at his desk. Due to his physical limitations, Maggio was also given an assigned parking space at the shop where he worked.

Even with these accommodations, Maggio claims, he was subject to discriminatory conduct based on his impairments. According to Maggio, he suffered various forms of verbal abuse, including other workers calling him names for his use of

2

a handicapped parking space.  Herbert Johnson, a Minolta regional service trainer who managed the shop where Maggio worked, and Ray Wiemuth, the Shop techs' supervisor, also allegedly "cracked" and "blew up" at him about his disability.  Maggio also contends that his co-worker Terry Stover called him a "fat ass" and that over the course of his employment, he received abusive notes that said such things as, "F--- you, Sam."  Maggio also claims that the company discriminated against him when Stover or Wiemuth asked another co-worker, James Bednarz ("Bednarz"), to take pictures of Maggio to assess his disability level.

In addition, Maggio alleges that he was excluded from the use of company computers, which were used for training.  The shop's work carts, which he used and considered to be an accommodation for his impairments, were also stolen throughout his employment, he claims.  These carts were the bottom cabinets of larger copy machines upon which smaller machines could be placed so he could work on them at eye level while sitting.

The discriminatory conduct that Maggio cites also included a "provisional" performance evaluation and the denial of a raise, overtime work, and his ultimate termination.  Shop techs are evaluated with a standard form on eleven different criteria.  For each criterion, shop techs can be rated, from lowest to highest, as "provisional," "satisfactory," "commendable," and "outstanding," receiving one to four points depending on the rating.  The overall rating a shop tech receives is the aggregate of the eleven ratings.  A shop tech earns a "provisional" overall rating if he receives a total of eleven to nineteen points, a "satisfactory" overall rating if he receives from twenty to twenty-nine points, and a "commendable" rating if he receives between thirty and forty-

3

one points.

On September 11, 2002, Maggio received his 2002 performance evaluation, which rated his performance in Minolta's lowest category - "provisional" - with a score of nineteen points. The evaluation also noted that Maggio needed to increase his production to a rate of 2.36 pieces of equipment per day to 3.5 pieces per day. Because of his "provisional" performance review, Maggio did not go up a level in seniority and as a result did not receive a salary increase.

Prior to this performance evaluation, Johnson, whose duties included evaluating the shop techs, produced a separate evaluation for the same time period. This evaluation was unsigned and was not presented to Maggio. In that evaluation, Johnson rated Maggio's performance as "satisfactory" with a score of twenty points. Johnson's supervisor, director of service Robert Antczak, lowered Maggio's overall performance rating to "provisional" status. According to KMBS, it was Antczak's job as Johnson's supervisor to review performance evaluations. He allegedly lowered Maggio's score because of Maggio's daily performance statistics and his observations of Maggio failing to focus on his work while in the shop.

Sometime in August 2003, KMBS contends, Antczak was told to eliminate a shop tech position as part of a reduction in force associated with the merger of Konica and Minolta. Because Konica and Minolta each had its own service shop, which were merging into a single service department, Minolta needed to reduce its own service workforce. According to KMBS, Antczak was not told which employees he should eliminate. Rather, he received direction from Carol Ceralli, Minolta's human resources manager, to consider an employee's performance and seniority in selecting whom to

4

terminate. In preparation for the termination, information was compiled about each shop tech's date of hire, 2002 performance evaluations, and production statistics from January 2003 through July 2003. The results of the compiled data ranked Maggio as the least senior and lowest rated employee. KMBS claims it terminated Maggio for this reason. It terminated him on September 8, 2003.

Maggio denies that he was terminated because of the Konica-Minolta merger. Rather, he contends, he was terminated due to his disability and claims and complaints he made to various government agencies, particularly his worker's compensation claim and a complaint he made to the Occupational Safety and Health Administration (OSHA). Between November 2000 and March 2004, Maggio filed seven claims against KMBS and its predecessor Minolta with various governmental agencies, including an anonymous complaint with OSHA in July 2002, an Office of Federal Contract Compliance Programs (OFCCP) complaint in December 2002 alleging disability discrimination, a February 17, 2003 claim with the Illinois Department of Human Rights (IDHR) and Equal Employment Opportunity Commission (EEOC), and another claim with the IDHR and EEOC on March 4, 2004.

**Discussion**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Because KMBS has moved for summary judgment, the Court takes all the facts and draws reasonable inferences in the light most favorable to Maggio. *See, e.g., Burnett v. LFW Inc.*, 472 F.3d 471, 477-78 (7th Cir. 2006).

## 1. Discriminatory termination claim

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of [his] disability." 42 U.S.C. § 12112(a). Maggio can attempt to prove his discriminatory termination claim by the direct method or the indirect, burden-shifting method. *Timmons v. Gen'l Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006). Under the direct method of proof, Maggio must show either direct or circumstantial evidence of intentional discrimination by KMBS. *Id.*

Proceeding under the burden-shifting indirect method of proof, also called the *McDonnell Douglas* method, Maggio must make out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 922 (7th Cir. 2001). In an ADA termination case, a plaintiff can establish a prima facie case of discrimination by showing: "(1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its actions. *Id.* at 381. If his employer does so, the plaintiff then must present evidence that the provided reason is pretextual. *Timmons*, 469 F.3d at 1127.

In his response to KMBS's motion, Maggio relies only upon the indirect, burden-shifting method of proof. KMBS contends that Maggio cannot establish certain

elements of his prima facie case or pretext.

### a. Actual or perceived disability

An individual is protected under the ADA if he has a physical or mental impairment that substantially limits a major life activity; has a record of such an impairment; or is regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities to include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment is substantially limiting if it renders a person unable to perform a major life activity that the average person can perform or significantly restricts a person as to the condition, manner, or duration under which he can perform the activity as compared to an average person. *Id.* § 1630(j)(1)(i)-(ii).

Maggio contends that his shrapnel wounds and rheumatoid arthritis prevent him from standing, lifting, climbing stairs, or walking long distances. KMBS does not argue that any of these fail to qualify as major life activities. The evidence, however, would not permit a reasonable jury to find that Maggio is actually unable to perform any of these activities or that he is significantly restricted in performing any of them. *Id.*

In *Squibb v. Memorial Med. Center*, 497 F.3d 775 (7th Cir. 2007), the plaintiff asserted that she was substantially limited in the major life activities of walking and sitting. The only evidence she offered on her ability to walk was a statement that she had difficulty walking. The Seventh Circuit ruled that no fact-finder reasonably could conclude from this generalized assertion, absent evidence of specific limitations such as time or distance, that the plaintiff was substantially limited in the activity of walking.

7

*Id.* at 785.

Maggio presents evidence similar to that in *Squibb*, in that he provides no details about the particulars of his limitations. In his deposition, Maggio stated that he does not "like going up stairs" because it "hurts" his hips. Maggio Dep. 82. He also claims that he has trouble lifting "real large things," *id.* 81, and that he cannot walk long distances. In sum, Maggio presents only general contentions, without specifics, regarding his claimed restrictions. For this reason, no reasonable jury could find him to be actually disabled in within the meaning of the ADA. *See also Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 756 (7th Cir. 2006) (impairments "couched in vague terms and unaccompanied by any evidence that the described afflictions were any worse than is suffered by many adults" insufficient to create a genuine issue of material fact (quoting *Rossbach v. City of Miami,* 371 F.3d 1354, 1358-59 (11th Cir. 2004)).

Maggio argues alternatively that he is disabled under the ADA because KMBS regarded him as disabled. The statutory provision permitting employees to sue under the ADA if employers regard them as disabled prevents reliance by employers on stereotypes they may have about impairments that are not, in fact, substantially limiting. *Baulos v. Roadway Express, Inc.*, 139 F.3d 1147, 1154 (7th Cir. 1998). An employee's impairment is "regarded as" a disability when (1) his employer treats the employee's non-substantially limiting impairment as constituting a substantially limiting impairment, (2) his employer regards an employee without a substantially limiting impairment as having one, or (3) the employee's impairment is only substantially limiting because of the attitudes of others toward the impairment. 29 C.F.R. § 1630.2(l). An employer's knowledge of an individual's impairment is not enough; the employer must also believe

that it substantially limits a major life activity. *Squibb*, 497 F.3d at 786; *Moore v. J.B. Hunt Transp., Inc*, 221 F.3d 944, 954 (7th Cir. 2000). Maggio argues that the facts that KMBS requested that he provide information about his disability's impact on his job performance, offered him the Shop tech position, and gave him a lower production requirement in order to accommodate his claimed disabilities, reflect that the company regarded his as disabled.

KMBS relies principally on *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331 (7th Cir. 2004). In *Cigan*, the Seventh Circuit rejected the plaintiff's argument that an employer's accommodations for her claimed disability meant that the employer regarded the employee as disabled within the meaning of the ADA. *Id.* at 335. The court reasoned that employers provide accommodations for a variety of reasons, not always because they believe an employee is ADA-disabled. *Id.* It found no evidence to support the contention that the employer believed the employee to suffer from a substantial limitation on a major life activity, *id.*, and accordingly, it upheld a grant of summary judgment against the employee.

KMBS argues that Maggio similarly lacks evidence showing that it believed he was substantially limited in any major life activities. The record does, however, include some evidence supporting Maggio's "regarded as" argument. Minolta vice president and general counsel Hans stated in his deposition that Maggio was primarily removed from his field tech job because of his unprofessional conduct. Hans Dep. 24. Hans also stated, however, that Maggio "was taken out of the field because he couldn't drive or couldn't climb stairs." *Id.* 22. When asked what difficulties Maggio had as a field tech, director of service Antczak responded, in part, "Getting up stairs. Couldn't walk up

9

any stairs to reach a customer on the upper level anywhere." Antczak Dep. 82. These statements could be understood as reflecting a belief that Maggio was wholly incapable of climbing stairs – in other words, that KMBS believed his impairments were more limiting than they actually were. *Cf. Squibb,* 497 F.3d at 786 (employer did not regard employee as disabled when there was no evidence to show that employer's beliefs about employee's limitations exceeded the scope of her actual non-limiting impairments). A jury reasonably could find that a worker's complete inability to climb stairs (in contrast to the vague difficulties in stair climbing that Maggio described in his deposition) constitutes a substantial limitation on a major life activity.

### b. Meeting employer's legitimate expectations

The Court also finds a genuine issue of material fact as to whether Maggio was meeting KMBS' legitimate expectations. KMBS relies on Maggio's 2002 "provisional" rating to argue that he was not meeting the company's expectations. The parties do not dispute, however, that Johnson - Maggio's more immediate supervisor - rated Maggio at the "satisfactory" level. Nor do the parties dispute that Antczak later changed Maggio's performance evaluation to "provisional."

According to KMBS, it was Antczak's job to review Johnson's initial evaluation of Maggio. Yet given that Johnson was Maggio's direct supervisor and thus arguably more familiar with his work, a reasonable jury could find that Johnson's evaluation of Maggio was accurate and that Antczak's was not. Accordingly, a reasonable jury could find that Maggio was meeting KMBS' legitimate expectations.

### c. Similarly situated employee

To establish that other non-disabled employees were similarly situated to him,

Maggio must provide evidence that they were comparable to him in all material respects.  *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006).  Factors to consider include whether the two employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690-91 (7th Cir. 2008).  The Seventh Circuit has emphasized, however, that the analysis should not be "hyper-technical," *id.*, and that employees need not be identical to be comparable.  Rather, only a substantial similarity is needed for meaningful comparison.  *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007); *Humphries v. CBOS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007).

Maggio compares himself to shop techs Bednarz and William Hanson because all three allegedly had the same supervisors, held the same shop tech position, and were subject to the same production requirement of fixing 3.5 machines per day, which they all failed to meet.  KMBS contends that these employees are not comparable to Maggio because they worked on more complicated machines and had better performance evaluations than he did.  The parties dispute, however, whether different shop techs primarily worked on different machines.  Maggio contends that because all shop techs worked on the various machines, the type of machines worked on is not a significant factor for comparison.

Regardless, Maggio is not situated similarly to Bednarz or Hanson, due to the material differences in their performance reviews.  KMBS relies on *Burks v. Wisconsin Department of Transportation*, in which the court found that the plaintiff's failure to

provide evidence that she and allegedly comparable employees had similar performance reviews meant that they could not be found to be similarly situated. *Burks,* 464 F.3d at 752. The Court has already concluded that there is a genuine issue of material fact as to whether Maggio's performance level was properly considered "provisional" or "satisfactory." But even were a jury to find that Johnson's initial rating of Maggio as "satisfactory" was the accurate rating, he still would not be comparable to Hanson or Bednarz, both of whom were rated "commendable," a level above "satisfactory." *See* Def. Exs. N & O.[1] Maggio provides no evidence that employees with these distinct performance ratings were considered by KMBS to be at the same level.

     Even if one considers only Maggio's initial, overall "satisfactory" evaluation by Johnson, Maggio was rated "provisional" in three subcategories, while Bednarz and Hanson had no "provisional" category ratings. Johnson Dep., Ex. 4 at 3; Def. Exs. N & O. And although Maggio received seven "satisfactory" ratings, Bednarz received only four, and Hanson did not receive any. Johnson Dep., Ex. 4, at 3; Def. Exs. N & O. These disparities are similar to those found in other cases to defeat a claim that employees were similarly situated. *See Peppers v. Climco Coils Co.*, No. 01 C 50163,

---

[1] The parties are inconsistent as to whether they agree that Bednarz was rated "satisfactory" for 2002. In response to paragraph fifteen of the Plaintiff's Local Rule 56.1 Statement of Additional Facts, KMBS agrees that Bednarz was rated "satisfactory." In paragraph sixty-two of his Response to Defendant's Local Rule 56.1 Statement of Material Facts, however, Maggio agrees that Bednarz was rated "commendable." Because the copy of Bednarz's 2002 performance evaluation included in the summary judgment record shows that Bednarz received a "commendable" rating, the Court will use that rating for purposes of this discussion. *See* Def. Ex. N.

2002 WL 31163753, at * 1-2 (N.D. Ill. Sept. 30, 2002) (employees who were not rated "poor" in any category and had overall "very good" and "good" evaluations were not similarly situated to plaintiff, who received a "poor" category rating and an overall "fair" evaluation; *Wilson v. Russell-Stanley Corp.*, No. 01 C 5975, 2002 WL 31834878, at *5 (N.D. Ill. Dec. 26, 2002) (employee who scored "below average" in two of ten categories was not similarly situated to the plaintiff, who scored "below average" in six categories). In sum, Maggio's performance evaluation indicates that his work rating was significantly lower than those of Hanson and Bednarz, such that no reasonable jury could find them to be comparable to him for purposes of the prima facie case analysis.

Maggio also appears to argue that shop tech Stover was similarly situated to him, noting that Stover was ranked as "satisfactory" but was not terminated. It is undisputed, however, that Stover had additional job responsibilities above and beyond the shop tech duties he and Maggio both had, including managing backlogs, troubleshooting, ordering parts, and managing the workload. Def. Ex. L; Pl. LR 56.1 Resp. ¶ 60. These extra work responsibilities prevent Stover from being considered similar to Maggio. *See, e.g., Marcus v. West*, No. 99 C 0261, 2002 WL 1263999, at *7 (N.D. Ill. June 03, 2002). Indeed, Johnson commended Stover in his performance evaluation for being able to keep a "good average of 3.46 pieces of equipment serviced per day while attending to [his] other duties." Def. Ex. O.

Maggio's ADA discriminatory termination claim therefore fails, as no reasonable jury could find that any other employee who was similarly situated to him was treated better than he was. Accordingly, the Court need not address the remainder of the burden-shifting analysis.

13

## 2. Retaliation claim

Finally, Maggio claims that KMBS discriminated against and wrongfully terminated him in retaliation for his filing of complaints with the IDHR, OSHA and the OFCCP. Retaliation can be proved directly, with direct or circumstantial evidence of retaliation, or indirectly. *Moser v. Ind. Dep. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2003). Maggio has argued his retaliation claim only under the indirect (burden-shifting) method, which requires him, initially, to establish a prima facie case of retaliation. *See* Pl. Resp. at 9-10. Maggio must present evidence that (1) he engaged in a protected activity; (2) he was subject to an adverse employment action; (3) he was performing his job satisfactorily; and (4) no similarly situated employee who did not engage in the protected activity suffered an adverse employment action. *Moser*, 406 F.3d at 903. Because the Court has already found that Maggio cannot sustain his burden on the last of these elements, KMBS is entitled to summary judgment on his retaliation claim.

## 3. Hostile work environment claim

Maggio also claims that he was subject to a hostile work environment due to his disability. The Seventh Circuit has not yet expressly recognized a right to sue for a hostile work environment under the ADA but has assumed the existence of such a claim in several cases in which the plaintiff failed to provide evidence sufficient to sustain a claim. *See, e.g., Mannie v. Potter,* 394 F.3d 977, 982 (7th Cir. 2005). In these cases, the Seventh Circuit has assumed that the elements of such a claim are the same as those needed to establish a hostile work environment under Title VII. *Id.; see also Silk v. City of Chicago,* 194 F.3d 788, 804 (7th Cir. 1999). Those elements

are: proof that the work environment was one that a reasonable person would find hostile or abusive and that the plaintiff in fact perceived it as such; the harassment was based on the plaintiff's membership in a protected class; the conduct was severe and pervasive; and there is a basis for employer liability. *See, e.g., Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 947 (7th Cir. 2005) (Title VII case).

The following are the primary allegations related to Maggio's hostile work environment claim:

- A supervisor and co-workers called Maggio names for parking in a handicapped parking space.[2]

- Wiemuth allegedly vandalized Maggio's car by placing screws in his tires, allegedly in retaliation for his use of a special parking space.

- Wiemuth and Johnson "cracked" and "blew up" at Maggio about his disability.

- Either Stover or Wiemuth asked Bednarz to take pictures of Maggio to assess his level of disability. Bednarz allegedly took pictures of Maggio lifting a large cabinet and lifting his handicapped parking sign.

- Maggio's coworkers would steal his work carts, which were part of KMBS's accommodation of his disability. Maggio states in his deposition that his co-workers and the warehouse workers "kept stealing the carts on me. And they

---

[2] KMBS also argues that the Maggio's allegations that he was yelled at for using a handicapped parking space are time-barred because this appears to have happened in 1998, more than 300 days before he filed his administrative charges. But an incident like this one that is not independently actionable can be used to support an otherwise timely hostile work environment claim even if it falls outside the statutory time limit. *See Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002).

did right until the last day." Maggio Dep. 71. Notably, KMBS did not respond to this particular contention in Maggio's Local Rule 56.1 Statement of Additional Facts. *See* Def. LR 56.1 Resp. ¶ 12.

- Maggio contends he was excluded from KMBS' computer training and the use of computers. Specifically, Maggio says he was denied training programs that were required for field techs but could also be taken by a shop tech to enhance his career opportunities. The training center was on the second floor of the building where Maggio worked, which he claims effectively excluded him because of his inability to climb stairs.

- Maggio also contends that Johnson refused him the ability to use the company's computers for training. Maggio Dep. 156-62.

- He received a "provisional" performance evaluation, which led to the denial of an annual raise.

- He received anonymous notes that referred to him as "fat ass."

KMBS primarily argues that Maggio has not addressed the factors that the Seventh Circuit has required to evaluate whether harassment is pervasive or severe. Indeed, Maggio does not offer specifics about how frequent, severe, humiliating many of the incidents were or whether they interfered with his work. Much of the harassment takes the form of improper but isolated incidents of yelling, insults, and vandalism. By themselves, these incidents likely would not permit a reasonable jury to find an abusive environment. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

But Maggio presents more than just isolated incidents that are not sufficiently severe to be actionable on their own. Conduct that detracts from an employee's work

performance or hinders his advancement can suffice to establish a hostile environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). A reasonable jury could find that the absence of shop carts, which allows Maggio to work while sitting and eliminated the need to lift machines, detracted from his performance and that denial of the opportunity for computer training hindered his opportunities for advancement. With these incidents, Maggio's case is roughly similar to *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 696 (7th Cir. 2001), in which the Seventh Circuit overturned a grant of summary judgment because it found the sum total of the conduct claimed by the plaintiff sufficient for a jury reasonably to find it objectively hostile. *Id*. The allegations in *Haugerud* included discriminatory comments, an increased workload, and evidence of attempts to hinder job performance, such as not allowing male custodians to assist female custodians. In this case, the evidence of repeated derogatory comments arguably targeting Maggio's impairments, the vandalism, and evidence that Maggio's coworkers and supervisors repeatedly obstructed his ability to perform his job or advance his career, could, in its totality, lead a reasonable jury to conclude that the work environment was sufficiently (i.e. severely and pervasively) hostile to meet both the objective and subjective hostility requirements.[3]

Because the Court has concluded that Maggio has provided evidence sufficient to sustain an ADA hostile work environment claim, it must address whether there is such a thing - a point that, as noted earlier, the Seventh Circuit has not yet squarely

---

[3] There is some evidence in the record from which KMBS could argue that it took reasonable steps to prevent or correct some of the incidents Maggio alleges. *See* Antczak Dep. 73-74, 100. But because KMBS does not assert this as a basis for summary judgment, the Court will not address the point.

determined. The Court agrees with those Circuits that have determined that a plaintiff may, in fact, assert a hostile work environment claim under the ADA. *See, e.g., Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004); *Shaver v. Independent Stave Co.,* 350 F.3d 716, 719 (8th Cir. 2003); *Fox v. Gen'l Motors Corp.,* 247 F.3d 169, 175-77 (4th Cir. 2001); *Flowers v. Southern Reg'l Physician Servs., Inc.,* 247 F.3d 229, 232-35 (5th Cir. 2001). In this regard, the Court notes, as discussed by the Tenth Circuit in the *Lanman* case, that the operative language of the ADA is indistinguishable from the parallel language in Title VII, which the Supreme Court has held encompasses a claim of discrimination based on a hostile work environment. *See Lanman*, 393 F.3d at 1155 (citing 42 U.S.C. § 12112 (ADA); 42 U.S.C. § 2000e-2(a)(1) (Title VII; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); and *Harris*, 510 U.S. at 21).

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment on plaintiff's discriminatory termination and retaliation claims (Second Amended Complaint, Counts 2 and 3) and denies defendant's motion on plaintiff's hostile work environment claim (Count 1). The case is set for a status hearing on September 29, 2008 at 9:30 a.m. for the purpose of setting a trial date. Counsel should be prepared to advise the Court regarding the anticipated length of trial on the remaining claim. The Court has identified a presumptive trial date of November 17, 2008.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 15, 2008